We have, good afternoon, and we have two cases this afternoon. The first is number 18-2592, Haynes v. Clarion University, et al., Mr. Engel and Mr. Hopkirk. Whenever you're ready. Thank you, Your Honor. My name is Joshua Engel, representing Mr. Haynes, the appellant. With the permission of the court, I'd like to reserve three minutes for rebuttal. That's fine. I should also note I'm accompanied at counsel table on Mr. Riley. Welcome. Good afternoon. Pleasure to have you. May it please the court, viewing all the evidence in this case in the light most favorable to Mr. Haynes, there were three problems with the Clarion process. Let me just cut to my concern. Yes, sir. How do you get around Alvin? He opted out. He opted out of the entire process. Yeah, I'd suggest there's two cases here, Your Honor, that suggest there's no waiver that should be found in this case. I don't want to lose the thread of your question, but on the last point, even if counsel had been present, counsel would not have been permitted to participate in his stead, which I think will become an important point in a moment. How do we know that? How do we know that he wouldn't have been able to argue? I mean, I know he couldn't testify, but how do we know it would have happened? Your Honor, we know that the rules for Clarion specifically state that counsel cannot participate, that counsel can act in an advisory role only, but cannot ask questions, cannot make argument, cannot give statements, opening statements, closing statements, do everything else that we'd normally anticipate counsel would do. But your client could have done everything short of testify without compromised Fifth Amendment rights. He could have. Yes. Now, but so the question, Your Honor's original question, if I can turn to it, and I don't want you to think I'm dodging this other question, I think the first case you have to look at is the Patsy case, and that's the Supreme Court case dealing with a professor from a Florida university. And in that case, the Supreme Court said that in Section 1983 actions, you did not have to exhaust your state administrative remedies in order to state a 1983 case. Now, the Alvin decision talks about Patsy, but I think it's important to understand where the Alvin decision limits that as well. First, it's important to understand in the Alvin case, you're also talking about a university case. And in that case, the professor brought a civil rights action alleging that the university denied him benefits of a tenured position and punished him for his entrepreneurial activity. Well, the test in Alvin is that you must take advantage of the processes that are provided in a civil proceeding unless those processes are unavailable or patently inadequate. And I guess you would have to say that they're patently inadequate here because under the university's internal rules, the attorney could not be there or they could not question the accuser. Here, however, I think it's a note 17 on page 26 of the answering brief. They said they would have done that. They would have allowed the attorney to have been there and would have allowed the attorney to have asked questions. I don't know if that's the case or not. Was there any indication given before this hearing in December of 2013 that an attorney could be present? No, Your Honor. In fact, I'd say there's nothing in the record that supports the idea that counsel could have played an active role in the hearing instead of Mr. Haynes. In fact, there's an indication in the record and we cite in our brief that the administrator told my client's mother that attorneys were not even allowed to be present at the hearing. But if you look at the, I think Your Honor's hit on the important point in Alvin. On page 111 of the Alvin case, they talk about the fact that in Alvin the plaintiff said that the procedures, if complied, would appear to provide due process. They emphasize that on page 118 where the plaintiff conceded in that case that the process was constitutionally adequate. So where's the due process violation on the face of the clarion documents? The due process violation on the face of the documents, and I think the low hanging fruit in this case, Your Honor, is the fact that clarion does not provide in its process any opportunity for an accused student to cross examine adverse witnesses. The victim, the rules are very specific in this case that they would not have been permitted to ask any questions of all of the person. In fact, the district court, in its opinion, one of the aspects of the opinion that we like, says specifically on page 10 of its opinion that the hearing procedure did not allow cross examination of an alleged rape victim. The appellees, I'd suggest in their brief, never suggest it's otherwise. What about the student bill of rights? Well, the student bill of rights. Section 5 of paragraph 5 in the second group of rights say the right to be present and hear all information and evidence related to the alleged violations and ask questions of all involved parties, including witnesses and the accused students. The policy reads, Your Honor, just as on page 159 of the joint appendix, that the reasonable questioning of witnesses is permitted. Now, I'd suggest to Your Honor respectfully that reasonable is doing a lot of work there. And I say this because it limits what they can do. But again, we're dealing with the abstract here. We don't know what would have been allowed and what wouldn't have been allowed. Well, that's not correct, I'd suggest, Your Honor. If you look at page 551 of the joint appendix, on page 798 of the joint appendix, and on page 639 of the joint appendix, you have depositions. And in those depositions, three witnesses who worked for Clarion testified that Mr. Haynes would not have been permitted to cross-examine the alleged victim, even if he had been present. The appellees do not direct this court to any evidence of the contrary. Well, but he never actually asked it. If he showed up and he said, I'm here and I want to cross-examine, somebody could have said, no, you can't. But you can't be sure what would happen if you don't ask for it. And he didn't show up and ask for it. So it's sort of hypothetical in a way. I mean, you don't know what would have happened for sure. For example, his attorney could have gotten up and said, look, this is unconstitutional if we can't cross-examine the witness. You know what? Maybe they would have agreed with him. I don't know. A couple of responses to that, Your Honor. First, on page 40 of the university's policy, which is at page 176 of the joint appendix, it says explicitly that the complainant and the accused student will not directly ask questions of each other as not to perpetuate a hostile environment any further. But it would have allowed questioning of the accuser by somebody else. Had he been present, somebody could have questioned the accuser, correct? No, that is not correct, Your Honor, because the rules would not have permitted, nothing in the rules suggests an attorney would be permitted to do that. Not an attorney, somebody, an advisor could have questioned the accuser. In fact, she was asked questions at the hearing. There's nothing to indicate that at all, I think, in the record, Your Honor. And the problem we have here, then, is that you've got a record where people say, we're not going to allow this questioning to happen. We're not going to allow indirect questioning or any form of questioning to happen in this. Certainly, let me fall back half a step. We're here on summary judgment. And so, you know, there's enough evidence in the record, based on what I've suggested to you, that there is this issue of fact that should have precluded summary judgment in this case. This would be different if we were here after a trial on the merits. The issue of fact being? The issue of fact being whether the school would have permitted cross-examination in this situation. And so when you get at what? What is it? What are you? Are you seeking damages? Or are you saying, look, we should remand this case and tell them that they have to have what you would perceive as a constitutionally adequate hearing, which would include the right to present witnesses, cross-examine. Well, you know, it's sort of a court-type hearing. Would you then have a complete remedy? Yes, Your Honor. I think what the ultimate relief in this case would be in order vacating the disciplinary finding in this case, and that would be on due process grounds. So it would not prohibit the school from going back and having a constitutionally adequate hearing. And are you suggesting that every time somebody is criminally charged, the school has to put everything in, held everything in abeyance pending the resolution of the criminal charges so that somebody could testify? I would never suggest that it should be an open-ended injunction like that, or an open-ended prohibition like that. But what you have here is a situation where you have an open, you have two important aspects of this case. One, you have an open criminal investigation or open charges there that preclude the student from testifying. The second thing that factors into this case that may not be present in other cases is he's no longer present on campus. He was given an interim suspension, and we're not suggesting right here to this court that that would be inappropriate. So you have to then, when you start weighing those factors, say, what is the cost of the school given those situations? So I'd say given those unique facts, Your Honor, yes, if you have a situation where the student is not on campus and the school can delay it without any harm, it should do so. And let me suggest that they should want to do so in that situation. Does your client want to go back to Clarion? No, Your Honor. He has graduated from another school at this point. He has graduated from Temple, has he not? He has graduated from Temple, and he's working. He may want to pursue graduate school in the future. He's indicated it's not. What are you looking for? What do you want us to do? What we're looking for, Your Honor, is for this to be remanded to the district court and eventually that his record be cleared. And the key reason for that is when he wants to apply to graduate schools, he's going to be inevitably asked, were you ever subject to discipline at a school? Or if he wants to be, I hate to suggest, a lawyer, if he ever wants to apply for the bar, he'd have to be asked, were you ever subject to discipline? And though it's not in the record, I can suggest to the court that having a finding like this on your record and answering yes to that question and describing a Title IX violation makes it extremely difficult to get into any graduate program going forward. Is the question, were you subject to discipline or were you accused? I mean, you can never erase the accusation. Yeah, the accusation would be there forever. I'm familiar, again, it's not in the record, but I can give you, the court, my own experience of dealing with many of these cases. Typically the question from graduate schools and for bar examiners is, have you ever been subject to discipline at the school? So he would be able to answer no in that situation if this discipline were vacated. Answering yes to that question, as I indicated. He said, are you subject to discipline? At one point he was subject to discipline, even if the discipline wasn't meted out. In other words, he was accused and they had this hearing. Yeah, so if he was asked, were you ever accused of anything? It's just like some bar examiners ask, were you ever arrested for a crime, even if you weren't convicted of it? You said something that may be interesting. Apparently you handle a lot of cases of this type? Yes, Your Honor. Is this type of procedure at Clarion unusual or what other schools do? This is very typical, Your Honor, of school processes that were in place at the time and that are still in many instances in place, with one exception. School processes, especially in the public schools, tend to have this type of hearing process. And I see I'm out of time, if I may. Readers have five more minutes. If I may continue. The schools tend to have an adjudicatory hearing where the person is able to present evidence. What is not unique about this is almost no school allows a student to be represented by counsel or to have counsel play an active role. The Department of Education is moving to change these rules, right? Yes, they have, Your Honor. There are proposed regulations, but they're still at the proposed stage and there's notice in coming. Factor that into the equation. That wouldn't affect this case at all. To answer your question, Judge Greenberg, one of the things that has changed in the last couple of years is that since the decisions from the Sixth Circuit dealing with confrontation, most schools... The Cincinnati case? That's Cincinnati and Baum in the last few months. Most schools now permit some form of cross-examination. So the process that you have here, where we suggest there was no opportunity for cross-examination, is not present in any other cases as well. What kind of cross-examination would you want or would you think would be sufficient from your side of the aisle? Well, there's two ways to answer that, Your Honor. The first is dealing with subject matter and the second is the manner of the cross-examination. We would suggest in terms of the first that cross-examination should be allowed on any relevant fact. One of the challenges you have in these cases is that you have no rules of evidence and you don't have a hearing chair who may be trained in the law to limit that, but clearly you can't go into things that would typically be precluded by rape shield laws or anything like that. But certainly there should be the opportunity to cross-examine the person on the facts of the case and also on information that would not be in the investigation in the case. And what I mean by that is a number of times students who allege that they are victims of sexual assault receive accommodations or benefits from the school as a result of that allegation. This may affect their credibility and it's typically not included in the investigative reports. So cross-examination is necessary in these cases to at least suss out what happened to the alleged victim as a result of her claim that she's a victim. Cross-examination by counsel? That goes to the manner. So when we go to the manner, what kind of cross-examination would you have? It would seem to be really difficult if you were to have the accused questioning the accuser. It would be very awkward. Wouldn't it be much better to have an attorney available and able to ask questions? Well, there's two answers to that, Your Honor. Both are yes. The first yes is that it would be better if there are attorneys present and able to do that. I mean, speaking as an attorney, I do have the belief that attorneys know where the lines are, what to ask, what not to ask, and are frankly more likely, I think, to do so in a delicate, respectful manner than someone who's not trained. That's speculation, I know, but the second thing, though, to answer your question about the process. You never did bankruptcy, did you? No. The second thing, though, to answer Your Honor's other question, I think, that may get at all this, is a lot of schools allow this cross-examination to occur by written questions. So the person would write down, the student would write down the question, submit it to the hearing panel, and the hearing panel would then read it to the alleged victim. It may depend also in that situation whether the alleged victim is actually present in the room. A number of schools allow the alleged victims to appear by teleconference or videoconference or anything like that, which eliminates that as well. I don't think you have to reach that question in this case to decide whether it's appropriate to, or what manner the cross-examination has to take. I do think it's probably enough for you to understand that other schools have adopted processes that make it not a binary choice, where you're allowing someone who's accused of a sexual assault unfettered access to the alleged victim in a way that could be harassing. I just want to ask one thing, just to get it clear. I know you want us to remand the case to the district court. What instruction should we give the district court? What should it do? I think the district court should, this is on summary judgment, so the first answer is the district court should set this matter for a trial. On what? To try what? On trial on whether there was adequate due process provided in this case. And let's assume the jury or the judge finds that there was not. What happens then? Then the court would issue a permanent injunction prohibiting the school from imposing discipline against Mr. Haynes under this process. The school then, again, as I indicated, the school would go back and do that. If you prevail. If we prevail, yes. So, again, I'm out of time again. I appreciate the extra time. That's the fact, though, that the court resolved certain, you know, resolved certain facts. What fact is it that the court would determine at a trial-type hearing? The point of the summary judgment is that it precludes a full inquiry into the facts. Now, what fact is it that the court should determine? I think maybe the way I'd answer this, Your Honor, is the three facts, which are the three facts or the three factors under the Matthews test. And so the court would have to hear testimony about what procedure was available, the possible benefits of that procedure, the possible the interest at stake for the student, the harm or the interest of the school in not having that procedure as well. Is that something, though, that we can't do on this record? You know, you say we know what rights were available. Essentially nothing. I mean, the way you see it. Yeah, I mean, the plaintiff in this case did not move for summary judgment. I mean, it's possible that on remand given, if this court were to remand, and depending on what this court said when it remanded the case, there may be enough for the plaintiff to move for summary judgment on, for example, the cross-examination case. The district court has already found that there was no possibility of cross-examination available for Mr. Haynes. So it's possible, given what this court would say at that point, that final judgment could be entered just on that point alone. We'll get you back on rebuttal. Great. Thank you, Your Honor. I appreciate it. Thank you for your time. Mr. Hopker. Good afternoon. May it please the Court. My name is Howard Hopker. I am a senior deputy attorney general for the Commonwealth of Pennsylvania. I represent Clarion University, its former president, Karen Whitney, and other named university officials. Due process requires notice and an opportunity to be heard. Clarion University provided Mr. Haynes with both. Go ahead. Go ahead, Bill. Does due process require the opportunity to cross-examine the accuser? So to the extent the district court said that that was not allowed, that's actually contradicted by the record. And I think Judge Ambrose was pointing, if you look at 159A and 176A of the record, where it talks about not being allowed to directly ask questions of the accuser, but that this would be allowed, someone else could ask questions. Was that conveyed? I thought that the university policies, internal policies, said that no one could cross-examine at this hearing. And what I read your footnote 17 saying is that they would have made an exception in this case. Is that correct? So, I mean, there's a general rule against having other people. So if there's a general rule that this would be an exception, was that exception if it was – it looks like it was not conveyed to the district court because the district court apparently thought otherwise. So was it conveyed to Mr. Haynes or his counsel in the criminal matter? So this is in the rules that would have been given to Mr. Haynes and all other students. No, but to your point, it was something conveyed to them that says, the general rule is that there is no cross-examination of the accuser. However, in this case, we will allow an attorney to be present and to ask questions. But it's not just in this case. It says in some cases an exception can be made, and that's where you get to the problem. Here's my specific question. In this case, was notice given to either Mr. Haynes or his counsel that someone besides Mr. Haynes could be present at this and that he or that person could ask questions? I would say not beyond the rules, I don't think. So in this case, the answer is no. But he was not told he couldn't and he – There's a general rule, and we follow general rules until somebody tells us there's an exception. But you have to – if you're going to give an exception, you have to give notice of the exception. I'm asking you, was notice given – The exception is in the written rules. But was notice given that the exception would be followed in this case? No, but that's – That's the answer. That is the answer. Which written rules specifically are you referring to? If you look at 176A, it's part of the guide to clearing university judicial policy. And on 170 – appendix 175, at the bottom, 5, and it goes on to the next page, the right to be present and hear all information and evidence related to the alleged violations and ask questions of all involved parties, including witnesses and the accused students. The complainant and accused students will not directly ask questions of each other as to not perpetuate a hostile environment any further. That's in the Student Bill of Rights. Yeah, and actually the specific point I'm referring to is in a different section, but it provides that the university will allow in some situations to have an advisor, to have an attorney, and have them ask the questions. Does it make any difference that Clarion is a public university as opposed to a private university? Did you hear that? Does it make any difference that it's a public university as opposed to a private university? Well, the full gamut of due process is going to apply to Clarion University because it is a public entity. So it does make a difference. Right. So, I mean, we don't argue any of that. What about the waiver issue? Is there a waiver here? Yeah, I believe so. I think if you look at Alvin, and I think there's a confusion between for Section 1983, just in general, there's not an exhaustion requirement. But if the fundamental cause of action is due process, then that's going to be a component of being able to prove a prime and face it case of a violation of due process. And that's what Mr. Haynes cannot do in this case. Have you looked at the Sixth Circuit case in Dover versus University of Cincinnati? I have looked at it, yes. And it basically says that when you are accused of something serious, the need for cross-examination is at its most critical. This obviously is a very serious accusation. And if you look at the general rule, there is no cross-examination allowed. It might have been allowed had, in this case, perhaps had he shown up, but no one knew that before the hearing. And in that case, University of Cincinnati, why would we not follow it and say that there is a right of cross-examination, not by the accused, but rather by an attorney, or perhaps as your opposing counsel has noted, by at least asking certain written questions that would be noted beforehand? So I would agree if the record actually showed that he was denied the right through himself or his attorney to cross-examine. But then you have the proposition, well, if the procedures are just a sham, then maybe you don't have to participate. But I really am going to hang my hat on the idea that there was at least the possibility of cross-examination. It's contemplated by the rules, and he had an obligation to at least show up and pursue that. And if he wasn't allowed to do that, to object to that, and bring the tribunal's attention to the fact that the rules did contemplate this, and if they'd said, no, we're not letting your attorney in, we're not letting you ask questions, we're not doing any of this, well, then that would be a different story. But instead of actually having a factual basis to say that, they want to speculate and say, oh, that's what would have happened. What rule? I need you to specify, identify the rule for me. You keep referring to this rule that would have allowed this or contemplated it. What rule specifically are you referring to? The closest I could find was the University Students' Bill of Rights, but you told me there's some other rule out there. Well, on 159 of the appendix, under formal hearings number 4, it talks about an opportunity for submission of written, physical, and testimonial evidence and for reasonable questioning of witnesses by both parties. And the other side just wants to say, well, that didn't really exist, or they wouldn't have really let us do that. And I think when they didn't even show up for the hearing, you have to give the university the benefit of the doubt that the rules provided for that, and they would have allowed that to happen, especially if the person showed up and said, wait, it's right here in your rule. You have to let us do that. That same document refers to, in cases of alleged sexual assault, the accuser is entitled to have an advisor present at the hearing. Please refer to the compliance manual section of this document. What's in there? I'm reading from Section 9, formal hearings. Same document you just read from. So that's another part of the rights under the whole policy of clearing a university. I think it's – I can't find the exact section. I believe it's in Volume 2 of the appendix. Those are the rules you're relying on to suggest that cross-examination was a possibility had he asked for it. Do I understand your argument correctly? Yeah. I mean, I think there's more than one place where, you know, it talks about the right to question witnesses, and then there's specific information about sexual assault where, you know, well, maybe the accused wouldn't be able to directly ask questions, but, well, some other mechanism would be allowed. And I think you had to let the University Conduct Board have the chance to work that out and let that happen and not just say that would just not be allowed. And I think if you send the case back, you're asking the district court to have a trial on what might have happened or what, you know, instead of what actually happened. The University Conduct Board didn't ask any questions at all, did they? You had a presentation by Mr. Schaefer, and then you had some statements by Ms. Austin, the purported expert, but there were no questions of any of them. And then also you had the person who, the accuser, the one who claimed that, you know, she was raped, that she testified. There were no questions asked of her. There were no questions asked of anyone, to my knowledge. I believe that's correct, but that just sort of highlights the idea that the accused needs to show up and ask questions. The Cincinnati case, the University of Cincinnati case, talks about in that case that it appeared that, or it seemed as if the board was given permission to ask the questions. We don't know if the board, we do know that the board here asked no questions whatsoever, and it gives the impression that the rights that might have existed in order to challenge a particular statement of anyone were not there. Now, the problem you have here is you've got, put yourself in the position of the criminal attorney for Mr. Haynes. If you're his criminal attorney, you're going to say you ain't going to that, because you're going to say that hearing in December, because you could say something that could incriminate you or be used against you in connection with the criminal prosecution. Ultimately, the criminal prosecution was dropped. But I can't imagine a criminal attorney saying to his counsel, no problem, why don't you go. I think he could have said, we're going to go together, you're not going to say anything. If they don't let me say, talk on your behalf, well, we're going to object and we're going to leave or whatever. But to say that he was denied due process because, you know, maybe that was the sensible thing for him to do as far as not testifying. But it doesn't mean that he was denied due process and you have administrative proceedings all over the place where the person is subject to criminal sanctions and it doesn't violate their Fifth Amendment rights to do that. What about the conjecture or the opinion statements, testimony, if you will, of Mr. Schaefer with regard to what he believed happened, whom he believed, et cetera? He went beyond to just the facts, didn't he? So one thing, if Mr. Haynes' attorney had been there, maybe he could have objected and had that straightened out. So that's another problem with not showing up. The other aspect, he really was in the position of a prosecutor for this case. He was not the fact finder. He did not participate with the actual members. Well, that's interesting because I thought he was the investigator for the case. If you're saying he's the prosecutor for the case, that's really not helpful to your position whatsoever. Well, it's an administrative proceeding. He's an investigator. I mean, he's the one who presented. If you're saying he's the prosecutor, that means that he's not there to just get the independent facts. He's there to be a prosecutor. Well, I think there is – You might want to rethink what you just said. I'm going to concede this, that in the record, it does indicate that the normal function of him or someone in the same position was to present the university's side of the case. It was not presented as this completely neutral thing. And it would be Mr. Haynes, through his attorney perhaps, who could bring the other side of the case. Was there a university side of the case before the hearing? I would have thought that there shouldn't have been, that it should have been neutral at that point, just like any proceeding. Well, the members of the board and the chairman of the board were neutral, but, I mean, the university had to bring these charges forward. So you're distinguishing the board from the university? Yes, Your Honor. Okay. The expert here, Ms. Austin, what was she an expert on? So she worked for a sexual abuse clinic counseling center. I thought she did training sessions, didn't she? What do they call it, 800 training sessions? In other words, called this 800 number? So, I mean, I think – other than training with respect to how one deals with these types of situations. I mean, if you look at the transcript of the hearing, the main thing she seemed to have knowledge about was that victims of sexual abuse often delay reporting that, that that seemed to be the crux of her testimony. I would just say, you know, she – You can't pick up a newspaper without reading that. You constantly read that, at least I do. People don't want to – they don't want to testify. They just want to close it out. So, again, if Mr. Haynes' attorney had been there, he could have said, wait a second, I object, what are her qualifications? But because no one was there, she was allowed to go forward. I don't think you would have a – even in a court of law where the one party failed to object to an expert and they actually weren't qualified where you'd say, oh, we're going to throw the verdict out now because, you know, they didn't participate or they didn't object. Any further questions? Judge Greenberg, any further questions? No, I don't have any questions. Thank you. I'll get back to you, Mr. Engle. Maybe you can enlighten us on exactly what the university policies are with regard to these types of hearings and who can attend and whether cross-examination is allowed. Yes, Your Honor. The first thing I would draw the court's attention to in that respect is page 159 of the joint appendix, and that's where they talk about the role of the advisors. And the advisor, it says very explicitly – sorry, Judge Greenberg, I don't want to move away from the microphone – that the advisor may only consult and interact privately with the student unless otherwise determined by the university regarding a particular case. So the university could make an exception in a particular case. Yes. So let's think about that. And ask for that to happen. And that's what they're indicating in footnote 17 of their brief, I would note, without any kind of reference to the record in there. I mean, this is an affidavit for a summary judgment. So they could have submitted an affidavit from someone saying, had this hearing gone on, I would have allowed A, B, and C. It's very notable they don't do that. And remember, we're on summary judgment, so we're entitled to the inference against it. That would have been speculative too. I mean, say had it gone on, I guess every case is different. Every case is unique. So there has to be – so in order for you to draw – let me say two things. One, in order for you to draw the conclusion that they want you to draw in footnote 17, you have to speculate significantly about the record that is empty. And there's nothing to support it. If you look at footnote 17, there's no references anywhere in the record at all. You're taking a big chance here. You might end up with an order for a real trial-type hearing. And the board might find as a fact that what was accused – what your client was accused of happened. And I was in a case about 40 years ago when I was a chancery judge in New Jersey where that did happen. I warned somebody. I said, you better be careful because you might get what you want. And you did. And I ended up finding without a jury the person who reacted to a threat. And I found the threat was legitimate. And the person ended up in prison. I mean, this is a risky case. Yes, Judge Greenberg, absolutely. I mean, that's like that in every due process case where if you're asking for due process, what you're asking for is the opportunity for that hearing. And it could always go the wrong way. There's no doubt. But I think in order to draw the conclusion that they would have allowed this process, as they described there, I think you have to make a number of leaps that are not reasonable. First, you have to assume that the school is going to change the role of the advisor. No, no, first you have to assume there's a request. Yeah, okay. Which didn't happen here. Which did not happen. You're right. They're not there. But it's unclear that you would actually have to request that. Let's assume that request is granted. And I'm going to get back to Alvin here in a moment. If I may answer, finish the answer. I'm out of time. No, go ahead. Keep going. So you have to assume a number of things that the university is going to do. They're going to change the role of the advisor from what's put forth in that policy. They're going to change the traditional way they've handled cross-examination. And you've got evidence in the record suggesting they're not going to do that. But let me not lose sight of the context of this as well. Because you have a context where you have an investigator who is working as a prosecutor, not a neutral investigator, despite what he says in his deposition is his role. You have a situation where you have a college president who's promised the alleged victim that they're going to kick him out of school in this case. So you've got a situation where you've already lined this thing up in a certain way, that it's going to end up with Mr. Haynes being expelled from this school. And so they want you to then say that given all this context, they're doing everything in their power to come down against Mr. Haynes, to throw him out of school on whatever minimal record they can have to do it, that they're going to all of a sudden decide, because his advisor shows up who's an attorney, who's not allowed to even open up his mouth at the hearing, but that he's going to be allowed to open up his mouth at the hearing, and the school is going to say, sure, we're going to give you all these extra due process protections, despite everything we've done in this case before. I think that's not a reasonable inference to draw, especially on a summary judgment standard. I think on a summary judgment standard, you have to stick with the record that we have. Let me see if I just get the facts out. My understanding is that the university policy says, quote, the complainant and accused student will not directly ask questions of each other as not to perpetrate a hostile environment any further. So there's no questions between the accuser and the accused. But as for questionings by an attorney, Clarion's procedure set a baseline rule that an attorney, quote, may only consult and interact privately with the student, that is the person that the attorney represents, with exceptions for active attorney participation on a case-by-case basis. And so the question then is, if there is an exception on a case-by-case basis, don't you have to show up, at least for the attorney, and say, okay, I want this to be the exception? I think this gets back to the first question I was asked, which is about the Alvin case. And the Alvin case says that if you have a patently inadequate process, you're not going to have it. Well, there's two ways this process is patently inadequate. The first is, as we've been talking about for the past half hour, is the lack of confrontation. And we can tease these rules out in one way or another and go back and forth, but I point, Your Honor, to the excerpts of the depositions we cite in our brief where the administrators say the questioning would be by the board, there wouldn't be any questions allowed by Mr. Haynes. But the second way we satisfy the question. That's predicated on the fact that there was never an ask. There was never an ask in this case. And I'm not saying otherwise. But Alvin doesn't say you have to ask. Alvin says if you have a system that is patently inadequate, you don't have to ask. So basically, when you ask if theoretically this system is patently inadequate and it allows for case-by-case exceptions, isn't the predicate to that, as just Judge Rochefort said, that you have to at least ask? No, I think the opposite, Your Honor. I'd suggest that if you have a patently inadequate system, and we're here on summary judgment, and I'm getting to the summary judgment weeds here a second, I think in order to make their case on summary judgment, they would have had to have an affidavit from someone, for example, saying if they had asked, we would have provided that. Well, we don't know that. You can't rerun the course. I mean, right now, an affidavit like that, if I read it at this stage, where all this has happened, I don't think I would pay much attention to it. I'd say, well, what do you expect them to say? That's probably what I would say, too, Your Honor, at this point. But what we have here, though, is, remember, we're on summary judgment. So when you entitle Mr. Haynes to all the reasonable inferences, there's nothing in the record to suggest that the school would have permitted cross-examination. That isn't the question. The question is whether it was asked. And there's no question he could have asked. There's no way of knowing what they would have permitted with any certainty. But he never asked. Well, that may be why you'd have to remand it for a trial, Your Honor. But what are you going to determine? Are you going to determine, did he ask? Because we know he didn't. In other words, we're talking here about the process, almost divorced from what actually happened. The process allows for play in the joints. To have play in the joints, it's almost like the old Woody Allen line, you know, showing off his 85% of the game. And not that he had to show up and be questioned, because you wouldn't want that for, if you were a criminal lawyer, having your counsel or having your client questioned. But showing up for the purpose of determining exactly what the rules of the road are. What the process is. We don't know if the process was patently inadequate because we never got there. Well, the challenge, there's two ways I'd answer that, Your Honor, if I may. The first challenge is that you don't have a situation like we have in every other area of the law where the person could be actually represented by counsel. So you have a very dangerous situation for a college student to go in and say, he's supposed to ask for whatever accommodations that they would provide to him under this scenario. Counsel could have written him a letter saying these are my objections to the process. Well, what we often hear in this case is that there's nothing here, nothing. That's correct, Your Honor. But what you have is a situation where, again, the student is being asked. We keep being told this is not a criminal process. This is a truth-finding process. This is an informal process. And then you're trying to hold the student to formal objections and saying you have to submit a letter perhaps or something else to do that. The second thing, though, and the threat I don't want to lose from the Alvin case that makes this case patently inadequate is you have significant evidence of bias in this record. And when you have significant evidence of bias, again ‑‑ there is clearly some indication of bias on behalf of Mr. Schaefer. And there may have been some statements by the university president who was not on this board that might indicate a leaning one way or the other. I don't see in the record anything one way or the other pertaining to those who actually made the decision. I'd suggest to you, Your Honor, two things. First, you have Mr. Schaefer acting as the advisor to the board. So when they have to deal with the questions of should we provide more process to this student, he's the one who's going to give them advice on it. That question was never put to the board because there was never a request for more process. There wasn't, Your Honor. And I'm not trying to challenge that point in any way. I'm trying to say that Alvin says that you don't have to make that ask. Alvin says if the situation or the process is patently inadequate, you don't have to make that ask. You're not required to exhaust that remedy or raise those issues. And to answer Your Honor's question about the decision maker, it's true that the decision makers were members of the faculty and were not Mr. Schaefer or were not on that. There might have been some students there too, right? There were some students. Yes, Your Honor. But I think included in that presumption in Your Honor's question is that this was a meaningful hearing done in a meaningful way and that this decision wasn't already lined up so that it was going to go a certain way. I was reminded of, you know, my young daughter went to a birthday party at a bowling alley. And at that bowling alley they had these inflatable things that they put over the gutters, so these little bumpers, so that no matter what the kids did, they were going to roll the ball down the blade, it hit the pins. And so that's what you have in this case, where you may have had people who appeared to be neutral decision makers, but you had the system set up both from the bottom with Mr. Schaefer and from the top with the university president, that they were inevitably going to find that they were that this student was responsible and they were going to expel. The weakness that you have in your case is that you have to show up and make the challenge in order to preserve the claim that there was a lack of due process, because there is a process set up and it does allow for persons to ask for an attorney to be present, to ask questions they were told that that, had it been asked, would have been granted. And so when you look at what I just read to you from 176 and 159, the university policy, how can I say that that process is on its face inadequate? My response, Your Honor, is the two ways I've just described to you, and I don't want to repeat myself, that we'd suggest that there's nothing in the record to suggest there would have been confrontation. There is something in the record to suggest there would not have been confrontation. And second, that you have a patent. What is in the record to suggest that it would not have been allowed any questioning whatsoever? We put, and I refer you to in our brief on page 40 and 41, we have excerpts from the record where one of the administrators said that both parties can have a chance to address each other and answer questions of the board. And there's other suggestions in there that it would be the board would have the ability to ask questions, but not the students in there. Well, then that would put us squarely within the process in the University of Cincinnati case, would it not? If the board could ask questions, yes. A process that the Sixth Circuit found was inadequate constitutionally in that system because the students were not permitted to have any ability to answer that. But I'd suggest then. Are you talking about Boehm or are you talking about the University of Cincinnati case? Well, I'm sorry. In the University of Cincinnati, the student, the alleged victim never shows up at a hearing at all. Right. She's not there at all. In the Michigan case, the alleged student shows up, but they don't allow any cross-examination in those particular cases. That's different. Yes. But to sum up, if I may, the idea that from Alvin is that this court hasn't in other cases looked at whether the procedures were inadequate or adequate on their face and not required that. Not required that person to actually assert that, but has been able to look underneath and excuse the fact that the person did not pose the question in order to answer the whether or not patently inadequate or not. Thank you very much. Thank you, Your Honor. I appreciate you taking the time. Thank you, counsel, for very helpful oral arguments. And we'll take the matter under advisement.